IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 16, 2015

IN RE **ALEXIS B.**

**Appeal from the Probate and Family Court for Cumberland County**
**No. 2013-PF-3498     Larry Michael Warner, Judge**

_____

**No. E2014-00943-COA-R3-PT-FILED-APRIL 14, 2015**

_____

This is a termination of parental rights case, focusing on Alexis B., the minor child ("the Child") of Katie R. ("Mother") and Johnny R.B. ("Father"). On August 26, 2013, the Child's paternal grandparents, Johnny B. and Deborah B. ("Grandparents"), filed a petition to terminate the parental rights of both parents and adopt the Child. Father subsequently agreed to surrender his parental rights to the Child, and he is not a party to this appeal. Following a bench trial, the trial court found that grounds existed to terminate the parental rights of Mother upon its finding, by clear and convincing evidence, that Mother had abandoned the Child by willfully failing to provide financial support and willfully failing to visit the Child in the four months preceding the filing of the petition. The court further found, by clear and convincing evidence, that termination of Mother's parental rights was in the Child's best interest. Mother has appealed. Having concluded that the evidence preponderates against a finding that Mother had the ability to financially support the Child during the determinative period, we reverse the trial court's finding that Mother abandoned the Child by willfully failing to provide support. We affirm the trial court's judgment in all other respects, including the termination of Mother's parental rights.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate and Family Court**
**Affirmed in Part, Reversed in Part; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., C.J., and D. MICHAEL SWINEY, J., joined.

John R. Williams, Crossville, Tennessee, for the appellant, Katie R.

Jonathan R. Hamby, Crossville, Tennessee, for the appellees, Johnny B. and Deborah B.

Sherrill Beard, Crossville, Tennessee, Guardian Ad Litem.

## OPINION

### I. Factual and Procedural Background

Mother and Father were never married, but they resided together with the Child in the Grandparents' home following the Child's birth in April 2011. The relationship between Mother and Father subsequently disintegrated, and Mother moved out of the Grandparents' residence in November 2012 when the Child was nineteen months old. Mother does not dispute that she was addicted to controlled substances during the period that she resided with the Grandparents and that this problem contributed to the Grandparents' asking her to leave. It is also undisputed that the Grandparents were the Child's primary caregivers even when both parents resided in the Grandparents' home. When Mother relocated, the Child continued to reside with the Grandparents. Father also continued to live in the Grandparents' home.

The Grandparents filed a petition for termination of both parents' parental rights and for adoption of the Child on August 26, 2013. As to Mother, they alleged that in the four months preceding the filing of the petition, she had abandoned the Child by willfully failing to provide financial support and willfully failing to engage in more than token visitation with the Child.[1] Upon Mother's subsequent affidavit, the trial court found her to be indigent and appointed counsel to represent her on September 30, 2013.

On November 8, 2013, the Grandparents filed a motion to restrain Mother from exercising visitation, averring that Mother had not sought to exercise alternate-week visitation until she was served with the petition to terminate her parental rights. The Grandparents further averred that visitation with Mother was not in the Child's best interest, *inter alia*, because the Child no longer knew Mother and no bond had been established.

On November 1, 2013, the Grandparents filed a motion, *inter alia*, requesting that the trial court require Mother to undergo "hair follicle drug testing." In a response filed November 6, 2013, Mother agreed to submit to a drug screen. Mother alleged, however, that Father was abusing controlled substances in the Grandparents' home. She requested that the court order hair follicle drug screens to be performed on Father, both Grandparents, and the Child.

---

[1]A permanent parenting plan order regarding the parents' co-parenting of the Child after Mother no longer lived in the Grandparents' home is referenced in pleadings and testimony, but the parenting plan does not appear in the record. Under the specific facts and issues raised in this action, the plan's absence does not affect our analysis.

Mother filed an answer to the petition on November 22, 2013. Mother again alleged that Father was continuing to abuse controlled substances while residing in his parents' home. She also averred that the Grandparents had prevented her from exercising her visitation with the Child. Mother subsequently filed two separate motions to set visitation: the first on December 4, 2013, and the second on January 20, 2014, upon her assertion that she had tested negative for controlled substances after submitting to hair follicle drug screening.

The trial court conducted a hearing regarding the Grandparents' motion to restrain visitation on November 13, 2013, and subsequently held a bench hearing upon Mother's motion for hair follicle drug screens of the other parties on December 12, 2013. In an order entered January 22, 2014, the trial court suspended Mother's visitation with the Child and directed that Mother, Father, both Grandparents, and the Child would undergo hair follicle drug screens. Following a subsequent hearing conducted on February 6, 2014, the trial court found that it was in the Child's best interest to deny Mother's motion for visitation pending the outcome of the case. The court entered an order to this effect on February 18, 2014, and set the date for final hearing on the termination petition. The court also appointed attorney Sherrill Beard as guardian *ad litem* ("GAL") to represent the Child.

Following a trial conducted on March 31, 2014, the trial court entered an order on April 22, 2014, finding by clear and convincing evidence that Mother had abandoned the Child by willfully failing to support or make reasonable payments toward support of the Child and by willfully failing to visit the Child during the four months preceding the filing of the petition for termination. The court further found by clear and convincing evidence that it was in the best interest of the Child for Mother's parental rights to be terminated. Mother appealed the order to this Court on May 15, 2014.

At the beginning of trial, Father had announced through his counsel that he would be voluntarily surrendering his parental rights to the Child. For this reason, the court heard evidence only as to the petition to terminate Mother's parental rights. After Mother filed her notice of appeal, this Court entered an order on July 8, 2014, directing Mother to show cause why the appeal should not be dismissed as premature due to the outstanding issue of Father's parental rights. The trial court subsequently entered an order on August 22, 2014, terminating Father's parental rights to the Child upon his voluntary surrender of those rights and certifying the August 2014 order as final pursuant to Tennessee Rule of Civil Procedure 54.02. This Court thereafter treated Mother's appeal as timely pursuant to Tennessee Rule of Appellate Procedure 4(d).

## II. Issues Presented

Mother presents four issues on appeal, which we have restated slightly:

1.      Whether the constitutional requirements applicable to an action for termination of parental rights can be achieved without a substantially verbatim transcript or otherwise sufficiently complete record upon which an appeal can be based and reviewed.

2.      Whether the trial court erred by finding that there was clear and convincing evidence of the statutory ground of abandonment by willful failure to support the Child.

3.      Whether the trial court erred by finding that there was clear and convincing evidence of the statutory ground of abandonment by willful failure to visit the Child.

4.      Whether the trial court erred by finding clear and convincing evidence that termination of Mother's parental rights was in the Child's best interest.

## III. Standard of Review

In a termination of parental rights case, this Court has a duty to determine "whether the trial court's findings, made under a clear and convincing standard, are supported by a preponderance of the evidence." *In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006). The trial court's findings of fact are reviewed *de novo* upon the record, accompanied by a presumption of correctness unless the evidence preponderates against those findings. *Id.*; Tenn. R. App. P. 13(d). Questions of law, however, are reviewed *de novo* with no presumption of correctness. *In re Bernard T.*, 319 S.W.3d 586, 597 (Tenn. 2010). The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Jones v. Garrett,* 92 S.W.3d 835, 838 (Tenn. 2002).

"Parents have a fundamental constitutional interest in the care and custody of their children under both the United States and Tennessee constitutions." *Keisling v. Keisling*, 92 S.W.3d 374, 378 (Tenn. 2002). It is well established, however, that "this right is not absolute and parental rights may be terminated if there is clear and convincing evidence justifying such termination under the applicable statute." *In re Drinnon*, 776 S.W.2d 96,

4

97 (Tenn. Ct. App. 1988) (citing *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)).  As our Supreme Court has instructed:

> In light of the constitutional dimension of the rights at stake in a termination proceeding under Tenn. Code Ann. § 36-1-113, the persons seeking to terminate these rights must prove all the elements of their case by clear and convincing evidence.  Tenn. Code Ann. § 36-1-113(c); *In re Adoption of A.M.H.*, 215 S.W.3d at 808-09; *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).  The purpose of this heightened burden of proof is to minimize the possibility of erroneous decisions that result in an unwarranted termination of or interference with these rights.  *In re Tiffany B.*, 228 S.W.3d 148, 155 (Tenn. Ct. App. 2007); *In re M.A.R.*, 183 S.W.3d 652, 660 (Tenn. Ct. App. 2005).  Clear and convincing evidence enables the fact-finder to form a firm belief or conviction regarding the truth of the facts,  *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005), and eliminates any serious or substantial doubt about the correctness of these factual findings.  *In re Valentine*, 79 S.W.3d at 546; *State, Dep't of Children's Servs. v. Mims* (*In re N.B.*), 285 S.W.3d 435, 447 (Tenn. Ct. App. 2008).

*In re Bernard T.,* 319 S.W.3d at 596.

## IV.  Sufficiency of the Record on Appeal

Mother contends that the record on appeal is insufficient for appellate review primarily because the record contains no verbatim transcript of the final hearing.  The record does contain a five-page statement of the evidence, which was approved by the trial court on June 26, 2014, pursuant to Tennessee Rule of Appellate Procedure 24(c), (e).  Mother argues that this statement of the evidence is an insufficient record of the testimony presented at trial.  The Grandparents assert that the statement of the evidence is a complete record of the testimony presented at trial and that, coupled with the trial court's specific findings of fact and conclusions of law, the evidence in the record is sufficient for appellate review.  As Mother notes, this Court has explained that "a parental rights termination case where a Statement of the Evidence would be sufficient would be extremely rare . . . ."  *See L.D.N. v. R.B.W.*, No. E2005-02057-COA-R3-PT, 2006 WL 369275 at \*5 (Tenn. Ct. App. Feb. 17, 2006).  However, having carefully reviewed the record, we determine that the case at bar constitutes such a "rare occasion" in which the evidentiary record is sufficiently complete for appellate review in a parental rights termination case despite the absence of a verbatim transcript.  *See, e.g., In re Austin C.*, No. M2013-02147-COA-R3-PT, 2014 WL 4261178 at \*6 (Tenn. Ct. App. Aug. 27,

2014) (affirming the termination of the mother's parental rights following review of an evidentiary record comprised in part of a statement of the evidence).

It is well settled that "in cases involving the termination of parental rights, a record of the proceeding of sufficient completeness to permit proper appellate consideration of the parent's claims must be made in order to preserve that parent's right to an effective appeal." *In re Adoption of J.D.W.*, No. M2000-00151-COA-R3-CV, 2000 WL 1156628 at *4 (Tenn. Ct. App. Aug. 16, 2000). As this Court explained in *In re Adoption of J.D.W.*, the United States Supreme Court has held that "a parent's interest in defending against a state's action in terminating parental rights require[s] a record complete enough to allow fair appellate consideration of the parent's claims." *Id.* at *3 (citing *M.L.B. v. S.L.J.*, 519 U.S. 102, 121-22 (1996)). If the trial court has determined that the parent is indigent, the court must "ensure there is a record of trial evidence that is sufficiently complete to allow an appellate court to review the evidence in accordance with applicable standards, even when the petition to terminate parental rights is filed by a private party." *In re Austin C.*, 2014 WL 4261178 at *4 (quoting *In re Adoption of J.D.W.*, 2000 WL 1156628 at *4 n.5); *see also M.L.B.*, 519 U.S. 102, 116 n.8 (1996) (explaining that state action is invoked when a private party asks the state to terminate a parental relationship).

Regarding whether an appellate record missing a verbatim transcript of the termination proceeding may constitute a record sufficiently complete for appellate consideration, this Court has recently explained:

> [W]e noted in *L.D.N.* that "a parental rights termination case where a Statement of the Evidence would be sufficient would be extremely rare." *L.D.N. v. R.B.W.*, 2006 WL 369275, at *5. However, no Tennessee court has held that an evidentiary record that is based solely on a statement of the evidence would automatically constitute an insufficient record. *Id.* More specific to the evidence in this record, our courts have not held that an evidentiary record that is based, in part, on a statement of the evidence is automatically insufficient. To the contrary, our courts have "stopped just short of holding that a Statement of the Evidence never will be sufficient for proper appellate review in a parental rights termination case and that a transcript always must be provided." *Id.* Nevertheless, the best way to proceed in a termination of parental rights case is by providing the appellate court with a complete transcript of all evidence. *Id.*
>
> What is required in appeals of parental termination cases is *an evidentiary record of sufficient completeness* to permit proper appellate review of the parent's claims. *See In re J.M.C.H.*, 2002 WL 31662347, at *4; *see also In re Adoption of J.D.W.*, 2000 WL 1156628, at *3-4.

6

*In re Austin C.*, 2014 WL 4261178 at 4-5 (emphasis in original); *see also In re T.B.L.*, No. M2005-02413-COA-R3-PT, 2006 WL 1521122 at *2 (Tenn. Ct. App. June 2, 2006) ("Although '[a] record of sufficient completeness does not translate automatically into a complete verbatim transcript,' *Mayer v. City of Chicago*, 404 U.S. 189, 194, 92 S.Ct. 410, 414 (1971), statements of the evidence will rarely suffice because of the burden of proof in termination of parental rights proceedings and the fact-intensive nature of the appeals.").

In the record before us, we have been provided with a statement of the evidence summarizing testimony presented by the paternal grandmother ("Grandmother") and Father on behalf of the Grandparents, as well as testimony presented by Mother, the maternal grandmother, a maternal aunt, and the father of Mother's oldest child on behalf of Mother. Mother's contention that the statement of the evidence insufficiently represents the termination proceeding is based on her assertions that (1) the trial court adopted the Grandparents' statement of the evidence over Mother's statement and (2) testimony revealed disagreement regarding the number of times Mother visited the Child "during the time period between her leaving the [Grandparents'] home" and the filing of the termination petition. We will address each of these assertions in turn.

First, Tennessee Rule of Appellate Procedure 24(c) provides in pertinent part:

(c) Statement of the Evidence When No Report, Recital, or Transcript Is Available. – If no stenographic report, substantially verbatim recital or transcript of the evidence or proceedings is available, the appellant shall prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection. The statement should convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal. The statement, certified by the appellant or the appellant's counsel as an accurate account of the proceedings, shall be filed with the clerk of the trial court within 60 days after filing the notice of appeal. . . . If the appellee has objections to the statement as filed, the appellee shall file objections thereto with the clerk of the trial court within fifteen days after service of the declaration and notice of the filing of the statement. Any differences regarding the statement shall be settled as set forth in subdivision (e) of this rule.

Pursuant to subdivision (e), "[a]ny differences regarding whether the record accurately discloses what occurred in the trial court shall be submitted to and settled by the trial court regardless of whether the record has been transmitted to the appellate court." Tenn. R. App. P. 24(e).

7

In the instant action, it is undisputed that Mother filed a statement of the evidence, to which the Grandparents responded by filing an alternative statement of the evidence. *See* Tenn. R. App. P. 24(c). The trial court, acting in accordance with Rule 24(e), determined that the Grandparents' statement of the evidence was more accurate and approved that statement for the record. Mother states in her brief on appeal that she subsequently filed a motion objecting to the statement of the evidence as approved but that the trial court took no further action. Mother further states that neither her original statement of the evidence nor her motion objecting to the adopted statement are included in the record. We note that pursuant to Tennessee Rule of Appellate Procedure 24(e), only the statement of the evidence certified by the trial court as accurate must become a part of the record. Moreover, nothing has prevented Mother from explaining in her brief on appeal any inaccuracies she alleges to be in the certified statement of the evidence.

As to the testimony regarding the frequency of Mother's visitation, it is important first to clarify the statutory determinative period at issue. The four-month determinative period for purposes of determining abandonment, pursuant to Tennessee Code Annotated § 36-1-102(1)(A), began on April 26, 2013, and concluded on August 25, 2013, the day prior to the filing of the termination petition. *See In re Jacob C.H.*, No. E2013-00587-COA-R3-PT, 2014 WL 689085 at *6 (Tenn. Ct. App. Feb. 20, 2014) (concluding that the applicable four-month statutory period preceding filing of the termination petition ends on the day preceding filing).

The testimony summarized in the statement of the evidence offers three different accounts regarding the number of times Mother visited the Child in the nine months spanning Mother's leaving the Grandparents' residence in November 2012 through the filing of the termination petition on August 26, 2013. None of these accounts isolates the four-month determinative period within that nine months. First, Grandmother testified that Mother had visited with the Child twice. Second, Father testified that Mother had visited the Child "three or four times." Finally, Mother testified that she had visited the Child "several" times following her move from the Grandparents' residence. The full summary of each of these parties' respective testimony is presented in the statement of the evidence as follows:

> [Grandmother] testified that she and her husband have had physical custody of the minor child essentially since birth, but that [Mother], had lived with them off and on, until November, 2012, when she was asked to leave the family home due, in large part, to [Mother's] drug use. [Grandmother] testified that [Mother] had allowed the child to remain living with the [Grandparents] and that [Mother] had visited the child two times that she could recall since leaving the home of the [Grandparents];

8

that [Mother] had been provided transportation to these visits and that [Mother] had been welcomed to the home during those visitations; that [Mother] had never supported the child financially; that the child was not bonded to [Mother] in the way that a child bonds with a parent; that the child really doesn't know [Mother]; and that in fact [Grandmother], had bonded with the child as a parent normally would. [Grandmother] further testified that the one time they were advised, during the pendency of this action, to take the child to [Mother] for visitation, that the child got extremely upset and did not want to stay with [Mother]. [Grandmother] further testified that she felt that changing the child's placement now would have a detrimental effect on the emotional well-being of the child, because the minor child had never known any home but that of the [Grandparents]; and that she and her husband had provided and have the ability to continue providing for the child emotionally and financially.

[Father] testified: That he was willing to voluntarily terminate his parental rights to allow his parents to adopt the child and that same is in the best interests of the minor child; that he currently lives with the [Grandparents] in their home, with the minor child; that he and [Mother] had used drugs together in the past but that he is now clean, with the assistance of a physician and the prescription drug suboxone; that [Mother] had visited with the child, in the home of the [Grandparents] only 3-4 times since moving out in November, 2012, despite the willingness of his parents to allow such visitation and even to provide transportation to her for such visitations.

[Mother] testified: That the [Grandparents] had, in fact, acted as the primary caretakers for the minor child following the child's birth; that she ([Mother]) had been drug addicted through July, 2013; that she had lived with the [Grandparents] until approximately November, 2012; that, following that move, she had visited the [Grandparents'] home on "several" occasions, but that she had stopped visiting because the [Grandparents] stopped coming to pick her up for those visitations and that she had no means of transportation at the time; that she had not paid any money for support of the child to the [Grandparents] but that she had tried to give them some clothes "and other items" to the [Grandparents] but those items were refused. [Mother] testified also that she was unemployed, although not disabled and that she was currently relying on support provided by her mother. [Mother] also testified that she was now living with [C.R.] who is the father of her youngest child. [C.R.] has a significant criminal and drug

9

history, but [Mother] indicated that he was doing much better and that they were both currently drug-free.

Having carefully reviewed the statement of the evidence together with Mother's assertion regarding disputed testimony, we determine that the statement of the evidence presents the disputed testimony as Mother describes it. In other words, Mother has not explained how her testimony allegedly differed from that presented in the statement of the evidence, nor has she asserted how the testimony of any other witness differed from its presentation in the statement of the evidence. We stress that the trial court's determinations as to witness credibility are afforded great deference on appeal. *See Jones,* 92 S.W.3d at 838. We therefore conclude that the evidentiary record before us, including testimony summarized through a statement of the evidence, constitutes a rare occasion in which a record containing no verbatim transcript is sufficiently complete for appellate review in a parental rights termination case. *See In re Austin*, 2014 WL 4261178 at *5 ("What is required in appeals of parental termination cases is *an evidentiary record of sufficient completeness* to permit proper appellate review <u>of the parent's claims</u>.") (underlined emphasis added).

However, in reaching this conclusion, we must emphasize that "the best way to proceed in a termination of parental rights case is by providing the appellate court with a complete transcript of all evidence." *See id.* at *4. Moreover, we further emphasize that if the trial court has determined that the parent is indigent, "then the trial court must ensure that such a record is created and made available to a parent who seeks to appeal." *See In re Adoption of J.D.W.*, 2000 WL 1156628 at *4.

V. Statutory Abandonment

Tennessee Code Annotated § 36-1-113 (2014) lists the statutory grounds for termination of parental rights, providing as follows:

(a)     The chancery and circuit courts shall have concurrent jurisdiction with the juvenile court to terminate parental or guardianship rights to a child in a separate proceeding, or as a part of the adoption proceeding by utilizing any grounds for termination of parental or guardianship rights permitted in this part or in title 37, chapter 1, part 1 and title 37, chapter 2, part 4.

* * *

10

(c)     Termination of parental or guardianship rights must be based upon:

> (1)     A finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and

> (2)     That termination of the parent's or guardian's rights is in the best interests of the child.

The trial court terminated Mother's parental rights on the ground that she abandoned the Child. Tennessee Code Annotated § 36-1-113(g)(1) (2014) provides in relevant part:

> (g)     Initiation of termination of parental or guardianship rights may be based upon any of the grounds listed in this subsection (g). The following grounds are cumulative and non-exclusive, so that listing conditions, acts or omissions in one ground does not prevent them from coming within another ground:

> (1)     Abandonment by the parent or guardian, as defined in § 36-1-102, has occurred; . . .

Tennessee Code Annotated § 36-1-102(1)(A)(i) (2014) defines abandonment, in relevant part, as:

> For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for termination of parental rights or adoption, that the parent(s) or guardian(s) either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child; . . .

Pursuant to the statute, the court must find that a parent's failure to visit or support was willful. *In re Adoption of A.M.H.*, 215 S.W.3d 793, 810 (Tenn. 2007). As this Court has previously explained:

> The concept of "willfulness" is at the core of the statutory definition of abandonment. A parent cannot be found to have abandoned a child under Tenn. Code Ann. § 36-1-102(1)(A)(i) unless the parent has either

11

"willfully" failed to visit or "willfully" failed to support the child for a period of four consecutive months.

*In re Audrey S.*, 182 S.W.3d 838, 863 (Tenn. Ct. App. 2005).

Failure to visit or support a child is "willful" when a person is "aware of his or her duty to visit or support, has the capacity to do so, makes no attempt to do so, and has no justifiable excuse for not doing so." *Id.* at 864. Further, failure to visit or to support is not excused by another person's conduct "unless the conduct actually prevents the person with the obligation from performing his or her duty . . . or amounts to a significant restraint of or interference with the parent's efforts to support or develop a relationship with the child." *Id.*

This Court further explained:

The willfulness of particular conduct depends upon the actor's intent. Intent is seldom capable of direct proof, and triers-of-fact lack the ability to peer into a person's mind to assess intentions or motivations. Accordingly, triers-of-fact must infer intent from the circumstantial evidence, including a person's actions or conduct.

*Id.* (citations omitted).

This Court has often held that a parent's demeanor and credibility as a witness play "an important role in determining intent, and trial courts are accordingly in the best position to make such determinations." *In re Adoption of Destiny R.D.*, No. M2011-01153-COA-R3-PT, 2012 WL 1066496 (Tenn. Ct. App. Mar. 27, 2012) (citing *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003)). Further, as Tennessee Code Annotated § 36-1-102(1)(G) expressly provides: "Specifically, it shall not be required that a parent be shown to have evinced a settled purpose to forego all parental rights and responsibilities in order for a determination of abandonment to be made."

### A. Willful Failure to Support

In its judgment terminating Mother's parental rights, the trial court found that Mother had provided only "token support" for the Child and "specifically no support during the four months immediately preceding the filing of the Petition." The court further found that Mother had "willfully failed to make reasonable payments toward the support of the child" during the determinative period. The trial court did not, however, make any specific finding regarding Mother's ability to pay support. Having carefully reviewed the statement of the evidence and the record as a whole, we conclude that the

evidence preponderates against a finding that Mother had the ability to pay child support during the determinative period. We therefore conclude that the evidence preponderates against a finding that Mother's failure to pay support was willful. *See In re Audrey S.*, 182 S.W.3d at 863 ("The concept of 'willfulness' is at the core of the statutory definition of abandonment.").

It is undisputed that at the time of trial, the Grandparents had been the Child's primary caretakers since the Child's birth and that Mother had never paid any funds to the Grandparents for the Child's support. These facts alone, however, are insufficient to support a finding that Mother's failure to support the Child during the determinative period was willful. "'A parent who fails to support a child because he or she is financially unable to do so is not willfully failing to support the child.'" *In re R.L.F.*, 278 S.W.3d 305, 320 (Tenn. Ct. App. 2008) (overruled on other grounds by *In re Kaliyah S.* ___ S.W.3d ___, 2015 WL 273659 (Tenn. Jan. 22, 2015)) (quoting *In re M.J.M., Jr.*, No. M2004-02377-COA-R3-PT, 2005 WL 873302 at *8 n.17 (Tenn. Ct. App. Apr. 14, 2005)).

The record contains the trial court's September 30, 2013 order finding Mother indigent and appointing counsel to represent her. The court's order appears on the same form and directly below the notarization of Mother's affidavit of indigency, also dated September 30, 2013. This affidavit and order were therefore entered approximately one month following the filing of the termination petition, or one month after the close of the determinative period. Mother was twenty-three years old at that time. According to her affidavit, she was unemployed, owned personal property limited in value to approximately $400, and received no income from any source. She indicated that her 2011 federal income tax return was the one most recently filed and listed her net income on that return as $300. According to the statement of the evidence, Mother confirmed through her testimony that she was unemployed. She stated that she relied on her mother for financial support. The maternal grandmother corroborated this testimony and also explained that she resided in New Jersey and had sent funds from there to help support Mother in Tennessee.

It is apparent from the record that Mother has three children in all. Mother in her affidavit of indigency named her eldest child, C.B., as a dependent. C.B. was born to Mother's previous relationship with R.B., who testified on Mother's behalf. Noting that he now believed Mother to be "drug-free," R.B. stated that he was "allowing" Mother "to exercise court-ordered visitation" with C.B. The Child at issue in this action is Mother's second child. Mother testified that at the time of trial, she was residing with her paramour, C.R., and her "youngest child." The age of Mother's youngest child appears only in a pleading Mother filed in November 2013, stating that the child's birthdate was in October 2013. On appellate review, we cannot accept a mere assertion in a pleading as

13

fact. *See* Tenn. R. App. P. 13(c). However, we note that Mother's affidavit of indigency, accepted by the trial court in its order granting her indigent status in September 2013, does not mention the youngest child. The record thus indicates that the youngest child was born after September 30, 2013, and before the final hearing held March 31, 2014. We can therefore surmise from the record that Mother was expecting a child during the determinative period and was at some point thereafter at least partially financially responsible for the care of an infant.

In summary, the record demonstrates that during the determinative period, Mother was unemployed, dependent on her own mother for financial support, expecting the birth of her third child, and to some degree financially obligated to support her eldest child as well as the Child at issue. Moreover, the only documented income attributed to Mother in the record is the $300 net income she claimed to have reported on her 2011 federal income tax return, approximately two years before the determinative period. The Grandparents failed to present any evidence that Mother had the ability to pay child support during the period at issue.

Regarding the trial court's finding that Mother had provided token support at some point in time prior to the determinative period, Mother testified that she had attempted to give some clothes and "items" for the Child to the Grandparents. *See* Tenn. Code Ann. § 36-1-102 (1)(B) (defining "token support" to mean that "the support, under the circumstances of the individual case, is insignificant given the parent's means"). The statement of the evidence contains no clarification regarding whether Mother offered these items during the determinative period, and Mother does not assert on appeal that she provided any more specific information during her testimony. Having concluded that the evidence does not support a finding that Mother had the ability to pay support, we further conclude that any issue regarding whether these items constituted only token support is pretermitted as moot.

The trial court erred by terminating Mother's parental rights based upon the ground of abandonment through willful failure to support the Child. We reverse the trial court's finding on this statutory ground.

B. Willful Failure to Visit

In its judgment, the trial court specifically found that Mother had "willfully failed to visit with the minor child . . . for a period of four (4) consecutive months immediately preceding the filing of the Petition to Terminate parental rights in this case." The court further found that the Grandparents had "exercised the role of primary caretakers and guardians of the minor child throughout the child's life" and that Mother had "exercised only 'token visitation.'" Upon a thorough review of the record, we conclude that these

14

findings, made under a clear and convincing evidence standard, are supported by a preponderance of the evidence.

As noted above, the statement of the evidence summarizes Mother's testimony regarding her visitation with the Child following November 2012, inclusive of the determinative period, as follows:

> [Mother] testified . . . that following [the November 2012] move, she had visited the [Grandparents'] home on "several" occasions, but that she had stopped visiting because the [Grandparents] stopped coming to pick her up for those visitations and that she had no means of transportation at the time . . . ."

On appeal, Mother does not specify any way in which her testimony at trial differed from this summary. She does assert as facts that she had "never learned to drive" and that her ability to visit the Child was "limited and dependent on others, including the [Grandparents] for transportation assistance." These assertions comport with Mother's testimony regarding her reason for ceasing visits with the Child as summarized in the statement of the evidence.

In contrast, Grandmother testified that she and her husband had transported Mother to their home to visit the Child twice since November 2012. Noting that the trial court is afforded great deference as to witness credibility, *see Jones,* 92 S.W.3d at 838, we still have no means of determining whether these two purported visits occurred during the determinative period, April 25 through August 26, 2013, or prior to that period. In the absence of proof regarding the specific dates of the visits, for purposes of analysis on appeal, we will assume that Mother visited the Child at the Grandparents' home at least twice during the determinative period. *See, e.g., In re Keri C.*, 384 S.W.3d 731, 748 (Tenn. Ct. App. 2010) (summarizing testimony regarding the frequency of the mother's telephone calls to the child and assuming for purposes of analysis on appeal that "a couple" occurred during the determinative period). The question then becomes whether the evidence supports the trial court's finding that Mother's two visits with the Child during the determinative period represented only token visitation.

Tennessee Code Annotated § 36-1-102(1)(C) defines token visitation as "perfunctory visitation or visitation of such an infrequent nature or of such short duration as to merely establish minimal or insubstantial contact with the child." *See also In re Keri C.,* 384 S.W.3d at 748 ("Whether visitation is 'token' under this definition is a fact-intensive inquiry to be decided on a case-by-case basis."). We conclude that the record is sufficient to support the trial court's finding that Mother's two visits with the Child during the determinative period (or even, *arguendo,* "several" visits during the nine-

15

month period preceding filing of the termination petition) constituted only token visitation. *See, e.g., id.* at 751 (concluding that visitation during the determinative period of "once-a-month half-hour contacts" with the two-year-old child "at large family gatherings [could] not be viewed as a reasonable attempt to forge a meaningful relationship with the child" and were thus token in nature); *In re Christopher J.B., Jr.*, No. E2014-00489-COA-R3-PT, 2014 WL 5044442 at *7 (Tenn. Ct. App. Oct. 9, 2014) ("[W]e conclude that Mother's sole visit during the requisite time period amounted to nothing more than token visitation because the visitation was of such an infrequent nature."); *In re Jamontez S.*, No. M2013-00796-COA-R3-PT, 2013 WL 5302503 at *5 (Tenn. Ct. App. Sept. 17, 2013) (concluding that the evidence supported the trial court's "finding that the two visits in the four months preceding the filing of the termination petition were token."); *but see In re E.M.P.*, No. E2006-00446-COA-R3-PT, 2006 WL 2191250 at *5 (Tenn. Ct. App. Aug. 3, 2006) (determining that given the "sparse record on appeal and the lack of a transcript," the record did not contain clear and convincing evidence that Mother's one visit to the child in four months could be characterized as token).

As to the willfulness of Mother's failure to visit, she asserted in testimony and now states in the facts section of her brief that she was forced to stop visiting the Child because the Grandparents stopped providing transportation. This assertion is unavailing. *See In the Matter of M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009) ("A parent's failure to visit may be excused by the acts of another only if those acts actually prevent the parent from visiting the child or constitute a significant restraint or interference with the parent's attempts to visit the child.").

Mother fails to address on appeal the trial court's finding of token visitation. In her brief, Mother's argument related to this issue is limited to a repeated assertion that the evidence presented in the statement of the evidence is insufficient to support the trial court's findings. We disagree as to this statutory ground. Upon our careful and thorough review of the record, we conclude that the evidence does not preponderate against the trial court's finding, under a clear and convincing standard, that Mother abandoned the Child by engaging in only token visitation during the determinative period. We determine that the trial court did not err in terminating Mother's parental rights based upon this statutory ground.

## VI. Best Interest of the Child

When a parent has been found to be unfit by establishment of a statutory ground for termination of parental rights, as here, the interests of parent and child diverge, and the focus shifts to what is in the child's best interest. *In re Audrey S.*, 182 S.W.3d at 877. Tennessee Code Annotated § 36-1-113(i) (2014) provides a list of factors the trial court is

to consider when determining if termination of parental rights is in the child's best interest. This list is not exhaustive, and the statute does not require the court to find the existence of every factor before concluding that termination is in a child's best interest. *In re Audrey S.*, 182 S.W.3d at 878 ("The relevancy and weight to be given each factor depends on the unique facts of each case."). Further, the best interest of a child must be determined from the child's perspective and not the parent's. *White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004).

Tennessee Code Annotated § 36-1-113(i) lists the following factors for consideration:

(1)     Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2)     Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3)     Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4)     Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5)     The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6)     Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7)     Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8)     Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9)     Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

In analyzing the best interest factors, the trial court in its judgment terminating Mother's parental rights stated in pertinent part:

[T]he termination of parental rights of [Mother] and adoption by the [Grandparents], is in the best interests of the minor child in question, based upon the following factors:

a)     A meaningful relationship has not been established between the minor child and [Mother] due to her infrequent contact with the minor child.

b)     That a change in the caretakers and the physical environment of the child would have a negative impact upon the child's emotional and/or psychological well-being.

c)     That both during the four (4) months preceding the filing of the Petition and after, [Mother] has failed to pay child support consistent with the child support guidelines promulgated by the department pursuant to Tenn. Code Ann. § 36-5-101[.]

d)     That the [Grandparents] have assumed primary parental responsibilities for the minor child since the child's birth, and in doing so, have exhibited the willingness and ability to support the minor child in all respects.

The trial court therefore concluded by clear and convincing evidence that it was in the Child's best interest to terminate Mother's parental rights. We agree.

Mother's sole argument regarding the best interest analysis is that the statement of the evidence does not indicate the trial court's finding. She therefore asserts that the "evidence is insufficient" to support the court's determination regarding best interest.

We disagree. The absence of a transcript containing the court's verbatim ruling on the day of trial does not prevent this Court from reviewing the trial court's findings of fact and conclusions of law presented in its written judgment. As this Court has previously explained, a trial court speaks through its written orders, and the appellate courts review only the trial court's written orders. *See In re Conservatorship of Alexander v. JB Partners*, 380 S.W.3d 772, 777 (Tenn. Ct. App. 2011). Despite Mother's lack of substantive argument regarding the best interest analysis, we will review the trial court's consideration of the statutory factors due to the significance of this analysis. *See In re Arteria*, 326 S.W.3d 167, 184 (Tenn. Ct. App. 2010) (overruled on other grounds by *In re Kaliyah S.* ___ S.W.3d ___, 2015 WL 273659 (Tenn. Jan. 22, 2015)).

Contrary to Mother's assertion, the trial court's written findings indicate that it analyzed the factors contained in Tennessee Code Annotated § 36-1-113(i) in determining that termination was in the Child's best interest. In particular, the trial court's findings show that it weighed the following factors against preserving Mother's parental rights: (3) failure to maintain regular visitation or other contact with the Child; (4) lack of a meaningful relationship between Mother and the Child; (5) negative effect a change of caretakers and physical environment is likely to have on the Child's emotional, psychological, and medical condition; and (9) failure to pay child support. *See* Tenn. Code Ann. § 36-1-113(i). Mother does not dispute that the Grandparents had been the Child's primary caregiver since birth. Grandmother testified that the Child had not bonded with Mother, and Mother offered no proof to contradict this testimony. The GAL opined at trial that the best interest of the Child would be served by terminating both parents' rights to the Child and allowing the Child to be adopted by the Grandparents. Mother has paid no funds toward child support. Having previously concluded that the evidence does not preponderate against the trial court's finding that Mother abandoned the Child by willfully failing to visit her, we determine that the evidence does not preponderate against the trial court's findings as to these statutory factors.

Further, our review of the record reveals that the remaining statutory factors applicable to this action do not weigh in favor of maintaining Mother's parental rights. *See* Tenn. R. App. P. 13(c) (noting that this Court "may consider those facts established by the evidence in the trial court and set forth in the record. . . ."); *see In re Dominique L.H.*, 393 S.W.3d 710, 716 (Tenn. Ct. App. 2012) ("We must then determine whether the facts, as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements necessary to terminate parental rights."); *White*, 171 S.W.3d at 194 (taking notice of the appellate record in affirming trial court's best interest finding). The trial court did not directly address in its judgment allegations that Mother had struggled with substance abuse throughout the Child's life.

19

By Mother's undisputed admission, she had been "drug addicted" through at least July 2013, a month prior to the filing of the termination petition. She testified that at the time of trial in March 2014, she was "currently drug-free." In Mother's summary of the facts on appeal, she states that she "has remained drug free since before the filing of this petition." Her citation to the record for this assertion is to the summary of the maternal grandmother's testimony that she "had seen a remarkable improvement in her daughter since she had been through drug-rehabilitation." Mother presented no documentation of a drug rehabilitation program. Mother also states in the facts section of her appellate brief that she underwent "numerous drug screens, including one ordered by the Trial Court in this case." The citation to the record for this assertion is to the trial court's January 22, 2014 order directing that all parties undergo hair follicle drug testing. Mother presented no documentation of a completed hair follicle drug screen.[2] Mother acknowledged at trial that her paramour, C.R., with whom she was residing, had a "significant criminal and drug history." She did assert that C.R. was also "currently drug-free."

Although Mother presented testimony that she may have successfully turned a corner in her struggle with substance abuse immediately preceding the filing of the termination petition, the record cannot be said to weigh in Mother's favor regarding the following factors: (1) whether Mother "has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home" and (7) whether the "physical environment" of Mother's home is healthy and safe, including whether there is "criminal activity in the home" and whether there is such use of controlled substances "as may render the parent or guardian consistently unable to care for the child in a safe and stable manner." *See* Tenn. Code Ann. § 36-1-113(i). We conclude that the record sufficiently supports the trial court's finding by clear and convincing evidence that termination of Mother's parental rights was in the Child's best interest.

## VII. Conclusion

The decision of the trial court is affirmed in part and reversed in part. We reverse the trial court's finding that Mother abandoned the Child by willfully failing to support her. We affirm the trial court's judgment in all other respects. Costs on appeal are assessed equally to the appellant, Katie R., and the appellees, Johnny B. and Deborah B. This case is remanded to the trial court, pursuant to applicable law, for enforcement of

---

[2]We note that such documentation, if presented as an exhibit at trial, would have been included in the appellate record pursuant to Tennessee Rule of Appellate Procedure 24(a), regardless of the availability of a verbatim transcript.

20

the trial court's judgment terminating parental rights and collection of costs assessed below.

_____
THOMAS R. FRIERSON, II, JUDGE

21